UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANESSA BARONE,<br><br>        Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF MOTOR VEHICLES, et al.,<br><br>        Defendants. | Case No. 3:23-cv-00858-WHO<br><br>**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 15 |

Plaintiff Vanessa Barone filed this lawsuit against the California Department of Motor Vehicles ("DMV") and its director, Steven Gordon, asserting that her due process rights were violated when the DMV suspended her driver's license without a hearing. Though the suspension has since been terminated, Barone seeks equitable relief to retroactively challenge the merits of the suspension and to remove the suspension from her driving record. The defendants filed a motion for judgment on the pleadings, asserting that Barone received due process through a post-suspension hearing process as provided by state statute but that she failed to follow through on that process. Because it seems plausible that Barone could successfully seek rehearing or removal of the suspension from her record under different legal theories, and for the following reasons, the defendants' motion is granted and Barone has leave to amend.

**BACKGROUND**

The following facts are alleged in Barone's complaint. ("Compl.") [Dkt. No. 1 Ex. A].

"Sometime before March 22, 2022," Barone felt light-headed and lost her balance when she stood up, but neither fell nor lost consciousness. *Id.* ¶ 10. She had recently given birth and thought that may have caused an iron deficiency that led to her light-headedness, so she emailed her doctor, Dr. Maria Bugay, requesting blood tests. *Id.* Barone spoke on the phone with Bugay,

confirmed she did not lose consciousness or experience a seizure, and told Bugay that her mother had experienced seizures related to blood clots. *Id.* ¶ 11. Bugay subsequently ordered blood tests which "showed elevated D-dimer, which is related to blood clots." *Id.* ¶ 12. Bugay told Barone to go to the emergency room. *Id.*

At the hospital, Barone's blood clot tests were "negative," her head and chest scans were normal, and "there was no evidence of pulmonary embolism," anemia, stroke, seizure, or loss of consciousness. *Id.* However on March 23, 2022, Bugay submitted a "Confidential Morbidity Report" to the DMV, "erroneously stating that Ms. Barone suffered episodic lapses of consciousness." *Id.* ¶ 13. It also stated that Barone did not experience multiple episodes or nocturnal seizures; did not lose consciousness while driving; and did not have a permanent disability, and the report also provided that Bugay was "uncertain" whether Barone would suffer additional lapses in consciousness. *Id.*

On April 15, 2022, Barone received a notice from the DMV that "her privileges to operate a motor vehicle would be withdrawn effective April 15, 2022," based on unfavorable medical information. *Id.* ¶ 14.

On April 20, 2022, Barone went to the DMV to "protest" the suspension of her driver's license. *Id.* ¶ 15. She asserts that a DMV representative informed her that her license was not suspended and that she was directed to "contact the Driver Safety Branch." *Id.* Barone did so, was given a "Driver Medical Evaluation form," and gave that form to her medical provider. *Id.* On April 18, 2022, Dr. Meiling Chiang provided Barone a letter that said Barone had no history of seizures, that there was no evidence she suffered from seizures, and that her lightheadedness was likely "due to dehydration, allergy or working with her computer for too long." *Id.* On May 12, 2022, Chiang "filled out a form" that stated that Barone did not lose consciousness. *Id.*

Barone alleges that she continually checked in with the DMV between May and October. *Id.* ¶ 16. On November 1, 2022, she received notice that her driver's license was no longer suspended. *Id.*

On November 17, 2022, Barone's auto insurer informed her that her premiums increased from $190.41 to $500.68 per month because her driving record indicated that her license had been

2

1  suspended. *Id.* ¶ 17. Barone contacted the DMV to seek removal of that note on her record but
2  was told that it would remain on her record for three years. *Id.* ¶ 18.
3        Subsequently, on December 15, 2022, Barone filed suit in state court against the DMV,
4  Gordon in his official capacity, and 25 Doe defendants, alleging violation of her due process rights
5  under the United States and California Constitutions. *See* Compl. The defendants removed the
6  case from state court. [Dkt. No. 1].
7        Now the defendants filed this motion for judgment on the pleadings. ("Mot.") [Dkt. No.
8  15]. Barone opposed. ("Oppo.") [Dkt. No. 16]. The defendants replied. ("Repl.") [Dkt. No. 18].
9  I held at hearing at which counsel for both parties appeared. [Dkt. No. 21]. Subsequently, I issued
10 an order for Barone to submit additional documents, [Dkt. No. 22], which she did, [Dkt. No. 23].
11       Those exhibits are the April 15, 2022 notice from the DMV suspending Barone's license,
12 ("April Notice") [Dkt. No. 23-1], and the November 1, 2022 notice from the DMV ending the
13 suspension, ("November Notice") [Dkt. No. 23-2].

## LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. Proc. 12(c). "Dismissal under Rule 12(c) is warranted when, taking the allegations in the complaint as true, the moving party is entitled to judgment as a matter of law." *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1246 (9th Cir. 2017) (citation omitted). "[M]otions for judgment on the pleadings are functionally identical to Rule 12(b)(6) motions." *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021) (internal quotation marks omitted) (citing *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)). "[U]nder both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation omitted). For both motions, dismissal may be based on either the lack of a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F. 2d 530, 534 (9th. Cir. 1984) (citation omitted).

A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its

1  face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A claim has "facial plausibility" when the
2  party seeking relief "pleads factual content that allows the court to draw the reasonable inference
3  that the defendant is liable for the misconduct alleged." *Id.* Although the Court must accept as
4  true the well-pled facts in a complaint, conclusory allegations of law and unwarranted inferences
5  will not defeat an otherwise proper Rule 12(b)(6) motion. *See Sprewell v. Golden State Warriors*,
6  266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his
7  'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the
8  elements of a cause of action will not do. Factual allegations must be enough to raise a right to
9  relief above the speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)
10 (citations and footnote omitted).

11 "Although Rule 12(c) does not mention leave to amend, courts have the discretion in
12 appropriate cases to grant a Rule 12(c) motion with leave to amend, or to simply grant dismissal of
13 the action instead of entry of judgment." *Cagle v. C & S Wholesale Grocers Inc.*, 505 B.R. 534,
14 538 (E.D. Cal. 2014) (first citing *Lonberg v. City of Riverside,* 300 F. Supp. 2d 942, 945 (C.D.
15 Cal. 2004); and then citing *Carmen v. S.F. Unified Sch. Dist.,* 982 F. Supp. 1396, 1401 (N.D. Cal.
16 1997)). Indeed, granting a Rule 12(c) motion and "[d]ismiss[ing] with prejudice and without
17 leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by
18 amendment." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Eminence*
19 *Cap., LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir.2003) (per curiam)).

20 **DISCUSSION[1]**

21 Barone makes the same arguments for her claims under the U.S. and California
22 Constitutions. She argues that her due process rights were violated because she was not provided
23 30 days' notice before the suspension was enacted. *See* Compl. ¶¶ 22, 28. As a result of that

---

[1] I consider the copies of the April Notice and the November Notice in this Order because they were incorporated into the complaint. *See* Compl. ¶¶ 14, 16; *see also Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1167 n.1 (N.D. Cal. 2019) ("Under the 'incorporation by reference' doctrine, a court may 'consider materials incorporated into the complaint or matters of public record,' including 'documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance.'" (quoting *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)).

violation, Barone was unable to contest the suspension or keep it off her driving record. *See id.* ¶¶ 24, 28. She asserts that her due process rights continue to be violated because of the suspension on her record, which has caused a significant increase in her insurance premiums. *See id.* ¶¶ 17, 18, 24, 30.

I.  **PRE-SUSPENSION HEARING**

Barone focuses most of her complaint and briefing on arguing that she was entitled to a pre-suspension hearing as a matter of law. In turn, the defendants assert that Barone was not legally entitled to a pre-suspension hearing and instead received sufficient process via the post-suspension hearing procedures and availability of judicial review.

Under California Vehicle Code ("CVC") section 13950, the DMV must provide "notice and an opportunity to be heard" before "propos[ing] to suspend or revoke" an individual's driving privileges. CVC § 13950. But section 13953 provides, in relevant part:

> [I]n the event the department determines upon investigation or reexamination that the safety of the person subject to investigation or reexamination or other persons upon the highways require such action, the department shall forthwith and without hearing suspend or revoke the privilege of the person to operate a motor vehicle . . . . No order of suspension or revocation . . . shall become effective until 30 days after the giving of written notice thereof to the person affected, *except that the department shall have authority to make any such order effective immediately upon the giving of notice when in its opinion because of the mental or physical condition of the person such immediate action is required for the safety of the driver or other persons upon the highways*.

*Id.* § 13953 (emphasis added). A person who receives notice under sections 13950 or 13953 has ten days to "demand a hearing" regarding the DMV's decisions, "which shall be granted." *Id.* § 14100(a). But there is no entitlement to a hearing if the person "has previously been given an opportunity with appropriate notice for a hearing and failed to request a hearing within the time specified by law." *Id.* § 14101(b)[2]; *see also* CVC § 14103 ("Failure to respond to a notice . . .

---

[2] Section 14101(a) provides that there is no entitlement to a hearing if the challenged action was "mandatory" under the law. *See also Pollack v. Dep't of Motor Vehicles*, 38 Cal. 3d 367, 380-81, 696 P.2d 141, 148 & n.8 (1985). Unlike the statute at issue in *Pollack*, which provides for mandatory suspension of a driver's license after a second conviction for drunk driving, *see* CVC § 13352, here the statute at issue provides that the DMV "shall have authority" to immediately suspend a license based on medical condition, *see id.* § 13953. Actions taken under section 13953 are therefore apparently not mandatory under the law, and so section 14101(a) does not apply— nor is *Pollack* applicable here.

5

1    within 10 days is a waiver of the right to a hearing."). An individual may also seek judicial review
2    "of any order of the [DMV] refusing, canceling, suspending, or revoking" her driver's license. *Id.*
3    § 14400; *see also id.* § 14401(a) (providing that judicial review must be sought within 90 days of
4    the date of the DMV's order).

5    Barone argues that she did not receive due process because her license was suspended
6    without a hearing. She concedes that she received notice, Compl. ¶ 14; *see also* April Notice, and
7    does not contest that the notice satisfied due process, *see Hopi Tribe v. Navajo Tribe*, 46 F.3d 908,
8    918 (9th Cir. 1996) ("Whether notice satisfies due process is a question of law." (citation
9    omitted)). She also does not contest that suspension before a hearing is statutorily permissible
10   under section 13953, Oppo. 6:6-8, and she specifically disclaims the argument that section 13953
11   is unconstitutional, *id.* 8:14. Rather, she appears to argue that the first doctor's note was an
12   inadequate basis for a section 13953 suspension, so her license could only have been suspended
13   under section 13950, which requires a pre-suspension hearing. *See id.* 6:8-26; Compl. ¶ 22. In her
14   view, her due process rights were violated because she did not receive that pre-suspension hearing.
15   In other words, Barone is challenging the merits of the DMV's decision to suspend her license
16   under section 13953, not the fact that the statute constitutionally permits suspension before a
17   hearing.

18   Under the U.S. Constitution, a claim for violation of procedural due process requires two
19   elements: "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a
20   denial of adequate procedural protections." *United States v. 101 Houseco, LLC*, 22 F.4th 843, 851
21   (9th Cir. 2022) (quoting *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971,
22   982 (9th Cir. 1998)). Here the parties do not contest that the first element is met. *See Dixon v.*
23   *Love*, 431 U.S. 105, 112 (1977) ("It is clear that the Due Process Clause applies to the deprivation
24   of a driver's license by the State.").

25   With respect to the second element, "[t]he determination of what procedures satisfy due
26   process [in a given situation] depends upon an analysis of the particular case in accordance with
27   the three-part balancing test outlined in *Mathews v. Eldridge*." *Brewster*, 149 F.3d at 983 (quoting
28   *Orloff v. Cleland*, 708 F.2d 372, 378-79 (9th Cir. 1983)); *see also Mathews v. Eldridge*, 424 U.S.

319 (1976). Those elements are: (1) "the private interest that will be affected by the official action"; (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Brewster*, 149 F.3d at 983 (quoting *Mathews*, 424 U.S. at 335). The same elements are considered and balanced for due process claims brought under the California Constitution, with an additional fourth element: "the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official." *Saleeby v. State Bar*, 39 Cal. 3d 547, 565, 702 P.2d 525, 535 (1985) (citation omitted); *Barclay Hollander Corp. v. Cal. Reg'l Water Quality Control Bd.*, 38 Cal. App. 5th 479, 508 n.38 (2019) (same).

Considering those elements here, first "the nature of the private interest" in a driver's license, while important, "is not so great as to require us 'to depart from the ordinary principle, established by our decisions, that something less than an evidentiary hearing is sufficient prior to adverse administrative action.'" *Dixon*, 431 U.S. at 113 (quoting *Mathews*, 424 U.S. at 343); *see also Saleeby*, 702 P.2d at 535 ("A formal hearing, with full rights of confrontation and cross-examination is not necessarily required. What must be afforded is a reasonable opportunity to be heard." (internal citations and quotation marks omitted)). In other words, the DMV was not required to provide the equivalent of a judicial hearing before suspending Barone's driver's license.

Second, the risk of erroneous deprivation is low. *See Brewster*, 149 F.3d at 983. Unlike in *Dixon*, 431 U.S. at 113, where the driver did not challenge the validity of the underlying rationale for the license suspension, here Barone says that the medical report was incorrect and inaccurate, so she was erroneously deprived of her rights. But the statute itself provides for suspension without notice only where the DMV is of the opinion that "immediate action is required for the safety of the driver or other persons upon the highways" based on "the mental or physical condition" of the driver. CVC § 13953. Importantly, the statute also provides the process by

7

which drivers may contest a suspension that they believe is erroneous. *See id.* § 14100(a). Though this process occurs post-suspension, the Supreme Court has said that post-deprivation process is sufficient for suspending a driver's license where there is a significant public safety issue. *See Dixon*, 431 U.S. at 113-14; *Mackey v. Montrym*, 443 U.S. 1, 17-19 (1979); *Schneider v. Sutter Amador Hosp.*, No. 2:14-CV-00804 GEB AC, 2014 WL 5473545, at *11 (E.D. Cal. Oct. 28, 2014), *report & recommendation adopted*, No. 2:14-CV-00804 GEB-ACPS, 2014 WL 13065162 (E.D. Cal. Nov. 20, 2014), *aff'd*, 621 F. App'x 480 (9th Cir. 2015). Indeed, here California law builds in two separate post-suspension processes: first Barone could demand a hearing under section 14100 and then she could seek judicial review under section 14400. These processes "satisfy the due process rights of drivers subject to suspension or revocation under section 13953," *Schneider*, 2014 WL 5473545, at *11, and the value of any additional procedural safeguards is minimal, *see Brewster*, 149 F.3d at 983.

Third, the government and public have an "important" and strong interest "in safety on the roads and highways, and in the prompt removal of a safety hazard." *Dixon*, 431 U.S. at 114 (citation omitted). In *Dixon* the Supreme Court held that the public interest in removing drivers repeatedly convicted of traffic offenses from the road without a pre-suspension hearing outweighed the private interest in a driver's license and the minimal risk of erroneous deprivation. *Id.* at 107, 113-15. The Court also reasoned that post-suspension hearing and notice was sufficient process because providing pre-suspension hearing and notice in cases of public safety "would encourage drivers routinely to request full administrative hearings" to automatically delay the suspension of their drivers' licenses, which would significantly "impede[]" public safety. *Id.* at 114. That same reasoning applies here—there is a strong and countervailing government interest in public safety, which is supported by immediately removing drivers with certain medical conditions from the road, without a pre-suspension hearing. *See also Schneider*, 2014 WL 5473545, at *11-12 (reaching same conclusion in factually similar case where plaintiff challenged the revocation of his driver's license without pre-suspension hearing).

Fourth, Barone's dignitary interest under the California Constitution, *see Saleeby*, 702 P.3d at 535, is important, and it is safeguarded by the availability of the post-suspension hearing

8

1   processes. For the same reasons that her private interest does not outweigh the public interest in

2   safety, her dignitary interest—given the available processes—does not outweigh the government's

3   interest in keeping the state's highways safe.

4         Accordingly, considering the balancing tests from *Mathews* and *Saleeby*, the California

5   statutes provide sufficient due process via a post-suspension hearing process. Though Barone

6   disagrees with the merits of the decision to suspend her license under section 13953, the statute

7   permissibly provides sufficient due process to challenge the merits *after* suspension, including

8   through judicial review. *See* CVC §§ 13953, 14400. She was not required to receive pre-

9   suspension notice or hearing, and the defendants' motion is GRANTED as to this argument.

## II. MAINTENANCE OF SUSPENSION ON DRIVING RECORD

11        In its motion, the DMV argues that Barone cannot assert a due process violation regarding

12  its maintenance of the suspension on Barone's driving record because she does not have a property

13  right to an accurate driving record. Mot. 11:17-14:9. The DMV also argues that it would be

14  contrary to the law and public policy for a court to order the DMV to change Barone's driving

15  record. *See id.* In opposition, Barone fails to address the argument about property rights to

16  accurate driving records and instead reframes her claim as one for defamation, which is not

17  mentioned in the complaint. Oppo. 7:13-28. She also asserts that there is no public policy benefit

18  to maintaining erroneous information on her driving record. *Id.* 8:1-19.

19        Despite the defendants' perspective, I do not read Barone's complaint to assert a separate

20  due process claim for maintenance of the suspension on her driving record. By alleging that the

21  maintenance of the suspension on her record violates her due process rights, *see, e.g.*, Compl. ¶ 24,

22  Barone clearly refers to her due process right to a hearing regarding the suspension. She says that

23  those rights were violated because she did not receive a hearing, and the manifestation of that

24  violation was the suspension of her license *and* the addition of the suspension to her driving

25  record. Indeed, the entire purpose of her case is to challenge the merits of the initial suspension

26  decision, which if successful may result in a judicial order setting aside the suspension decision, in

27  turn legally requiring the DMV to remove the suspension from her record. *See* CVC § 1808(c)-

28  (d). Accordingly, the maintenance of the suspension on her driving record is not a separate due

1   process challenge that requires Barone to demonstrate an independent basis or property right. *Cf.*
2   Mot. 11:25-12:27.

3   And, contrary to the DMV's assertions, neither California law nor public policy precludes
4   reopening an inquiry into Barone's suspension or granting her a hearing even if she waived her
5   right to a hearing. Indeed, CVC section 14103 provides that even if a driver waives her right to a
6   hearing by failing to request one within 10 days of the notice, the DMV still "may, upon request of
7   the person whose privilege of driving is in question, or at its own option, reopen the question, take
8   evidence, change, or set aside any order previously made, or grant a hearing." CVC § 14103. If it
9   grants a new hearing, the DMV may modify any prior decision "to correct mistakes." *Id.*
10  §§ 14105(b), 14105.5(d). The DMV may also "reopen the question, take further evidence, or
11  change or set aside any order previously made" even after a final decision. *Id.* § 14106. Barone's
12  challenge to the merits of the initial suspension therefore may properly be considered and the
13  DMV may lawfully modify the previous suspension.

14  Further, the DMV is wrong on the law (and policy) that it cannot remove the suspension
15  from Barone's record. While state law requires the DMV to "make available or disclose
16  suspensions and revocations of the driving privilege while the suspension or revocation is in effect
17  and for three years following termination of the action or reinstatement of the privilege" save
18  certain exceptions not applicable here, it also provides that the DMV "shall not make available or
19  disclose a suspension or revocation that has been judicially set aside or stayed." CVC § 1808(c)-
20  (d). Accordingly, if the present case results in an order staying or setting aside the initial decision
21  to suspend Barone's license, the DMV is legally prohibited from publishing that suspension on
22  Barone's driving record. Compliance with that existing statute is not, as the DMV contends,
23  rewriting the CVC to provide for a new exception for suspensions based on inaccurate medical
24  information.

25  And the DMV misses the mark by arguing that it is good public policy to keep the medical
26  report on Barone's record. *See* Mot. 13:17-14:6; Repl. 7:7-18. Though it makes sense that the
27  DMV and insurers would benefit from knowing about medical information relevant to Barone's
28  driving ability, Barone's point is that the medical information is inaccurate; if that is correct, there

is no public policy benefit for the government or insurers to have access to inaccurate medical information, and indeed it would be likely be contrary to public policy to maintain the record and indirectly punish the driver with higher insurance premiums based on incorrect information.

Accordingly, the motion is DENIED as to this argument.

### III. LEAVE TO AMEND

With respect to the arguments above, Barone is granted leave to amend to clarify her claims. Importantly, she seems to assert that she tried to overturn the suspension decision but was misled by a DMV representative or otherwise was not provided process. If she can clarify this allegation and provide additional context or support, she may be able to plead a due process violation.

Barone alleges that she followed the instructions on the April Notice—which told her to "contact your local Driver Safety office" and that a "hearing may be requested by telephone, mail, or in person"—and that she timely contacted the DMV. *See* Compl. ¶ 15; April Notice; *see also* Oppo. 7:1-9. Barone does not allege that she requested a hearing, but she does say she went to the DMV within the correct time period, the representative said her that her license was not suspended, and she was informed that she could resolve any issues by contacting the "Driver Safety Branch." Compl. ¶ 15; *see also* Oppo. 7:1-9. The Driver Safety Branch then gave her a "Driver Medical Evaluation," which she submitted back to the DMV with information from her new doctor, who medically cleared her. *See* Compl. ¶ 15.

The DMV subsequently sent the November Notice informing Barone that her suspension ended. *See* November Notice. The box is checked for, "**After review of the information on file**, including any **evidence which you may have presented**, the action(s) effective April 15, 2022, pursuant to § 13953 . . . is ended." *Id.* (emphases added). The checkbox for suspension "is set aside" was not selected. *See id.* There is no information about appealing this decision to *end* her suspension—rather than set it aside, which apparently would remove it from her driving record—or about how to ask the DMV to correct a prior decision. Notably, the box on the notice is not checked for, "**In compliance with your request**, a Department Review of the information and **evidence submitted at your hearing** has been completed, pursuant to §14105.5 VC. The action

11

1  effective __ , pursuant to § __, of the Vehicle Code (VC), 0 is set aside, 0 is ended." *Id.*
2  (emphases added).  As discussed, *supra* Part II, section 14105.5 provides a path for the DMV to
3  modify its prior decisions and correct mistakes after a hearing.

4  The November Notice therefore suggests that Barone did not request a hearing and instead
5  only submitted evidence to contest the April Notice and suspension.  Yet, the November Notice
6  also implies that the DMV accepted the evidence that Barone submitted and ended her
7  suspension—but did not set it aside—based on that evidence.  Because the DMV did so without a
8  hearing, it is not clear how Barone could have followed the appeal process laid out in the first
9  notice, which tells her how to appeal an adverse decision "after the hearing."  April Notice.  And
10 because there was no hearing, the DMV could not modify is prior decision or correct a mistake
11 under the Vehicle Code, which seems to only contemplate such a correction or modification after a
12 hearing.  *See* CVC §§ 14103, 14105(b), 14105.5(d).   In other words, even if Barone failed to
13 request a hearing—which is not clear from the complaint—and instead only submitted evidence to
14 challenge the April Notice and suspension, it is not clear that she was provided notice of how to
15 challenge the changed result that came from the evidence she submitted.  The November Notice
16 does not clearly provide how to appeal or challenge the decision to end her suspension rather than
17 set it aside.  Based purely on the two notices, it seems plausible that the DMV followed a separate,
18 "no hearing" process for the suspension and end of the suspension which does not seem to clearly
19 follow the provisions of any statutes cited by the parties.

20 Based on this lack of clarity from both sides, it seems likely that Barone could plausibly
21 allege a due process violation, though her complaint and briefs do not currently address these
22 issues.  Accordingly, though the motion is GRANTED for the above reasons, Barone has leave to
23 amend to plausibly allege a due process violation.  *See Harris*, 682 F.3d at 1131; *Cagle*, 505 B.R.
24 at 538.

25 **IV.    CLAIM UNDER 42 U.S.C. § 1983 AGAINST DMV, STATE OF CALIFORNIA**

26 Finally, the defendants argue that Barone's claims under 42 U.S.C. § 1983 claims against
27 the DMV, the State of California, and Gordon fail as a matter of law.  Mot. 14:10-18.  Barone
28 asserts that she can overcome this by amending her caption and clarifying that the suit is against

the State of California. Oppo. 8:20-25.

States and state officials sued in their official capacities are not "person[s]" under 42 U.S.C. § 1983 and so cannot be sued under § 1983, except that state officials acting in their official capacities can be sued under § 1983 in suits seeking prospective injunctive relief. *Doe v. Lawrence Livermore Nat'l Lab'y*, 131 F.3d 836, 839 (9th Cir. 1997) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)); *Schneider*, 2014 WL 5473545, at *6 (same); *see also Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1221 (9th Cir. 2023) ("[Section] 1983 does not provide a cause of action to sue state entities or state officials in their official capacities."). "The State of California Department of Motor Vehicles is not a 'person' within the meaning of the Civil Rights Statutes [including 42 U.S.C. § 1983]" and therefore cannot be sued under those statutes. *Sykes v. State of Cal. (Dep't of Motor Vehicles)*, 497 F.2d 197, 201 (9th Cir. 1974).

Because the State of California and the DMV cannot be sued under § 1983, *see id.*; *Doe*, 131 F.3d at 839, the motion is GRANTED with prejudice as to these defendants.[3] But because state officials may be sued in their official capacities under § 1983 if the suit seeks prospective injunctive relief, *see Doe*, 131 F.3d at 839, which this suit appears to seek, *see* Compl. at 7-8 ¶¶ 1, 3, the motion is DENIED as to the claim against Gordon in his official capacity.

## CONCLUSION

For those reasons, the motion is GRANTED with leave to amend by February 20, 2024.

**IT IS SO ORDERED.**

Dated: January 29, 2024

William H. Orrick
United States District Judge

---

[3] To the extent that the State of California was not yet named in this complaint, but Barone seeks to amend her complaint to name the state, that amendment would be futile for the reasons discussed.